IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF VANTUS BANK; ARLENE T. CURRY; GARY L. EVANS; DAVID M. ROEDERER; BARRY E. BACKHAUS; RONALD A. JORGENSEN; CHARLES D. TERLOUW; JON G. CLEGHORN; ALLEN J. JOHNSON; MICHAEL W. DOSLAND; and MICHAEL S. MODERSKI<br><br>Defendants. | CIVIL ACTION NO.<br>5:12-CV-04041-DEO |

**PROGRESSIVE CASUALTY INSURANCE
COMPANY'S ORIGINAL COMPLAINT**

COMES NOW Progressive Casualty Insurance Company ("Progressive") and files its Original Complaint against the Federal Deposition Insurance Corporation, as Receiver of Vantus Bank ("FDIC") and Arlene T. Curry, Gary L. Evans, David M. Roederer, Barry E. Backhaus, Ronald A. Jorgensen, Charles D. Terlouw, Jon G. Cleghorn, Allen J. Johnson, Michael W. Dosland, and Michael S. Moderski (collectively the "Directors and Officers").

I. **NATURE OF THE ACTION**

1. This is an action by Progressive for a declaratory judgment with respect to Directors & Officers / Company Liability Insurance Policy for Financial Institutions No. 10032780-01 (the "Progressive Policy" or the "Policy") issued by Progressive to, *inter alia*, Vantus Bank (the

"Bank"). On September 4, 2009, the Office of Thrift Supervision ("OTS") closed the Bank and appointed the FDIC as receiver. On information and belief, the Directors and Officers are former directors and officers of the Bank. Progressive seeks a declaration that there is no coverage under the Policy for the claim first asserted against the Directors and Officers by the FDIC in a May 7, 2010 letter (the "FDIC Letter") sent to the Directors and Officers by the FDIC's outside counsel (the "Receiver's Claim"). A copy of the Progressive Policy, without the application, is attached hereto as Exhibit 1. A copy of the FDIC Letter is attached as Exhibit 2.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1331 because all suits to which the FDIC is a party are deemed to arise under the law of the United States.

3. Progressive brings this declaratory judgment action pursuant to 28 U.S.C. §§ 2201 and 2202. An actual controversy within the meaning of § 2201 exists between the parties regarding the coverage afforded under the Policy for the Receiver's Claim.

4. Venue is proper in the Western Division of the Northern District of Iowa pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district and division, and, upon information and belief, at least one of the Directors and Officers resides in this district and division.

## III. THE PLAINTIFF

5. Plaintiff Progressive is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Mayfield Village, Ohio.

## IV. THE DEFENDANTS

### A. The Federal Deposit Insurance Corporation

6. Defendant FDIC is an agency and body corporate organized and existing under the laws of the United States of America, established under the Federal Deposit Insurance Act, with its principal place of business in Washington, D.C. *See* 12 U.S.C. §§ 1811–1833(e). Prior to its closure, the Bank was headquartered in Sioux City, Iowa. On September 4, 2009, the OTS declared the Bank to be insolvent, closed it, and appointed as receiver the FDIC pursuant to 12 U.S.C. § 1821(c). Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC succeeded to all rights, titles, and privileges of the Bank with respect to the Bank and the Bank's assets and stands in the Bank's shoes with respect to claims against the Bank's former directors and officers. This action is brought against the FDIC in its capacity as receiver for the Bank.

### B. The Individual Director and Officer Defendants

7. On information and belief, Defendant Arlene T. Curry is an individual who is a citizen of the state of South Dakota and resides in Elk Point, South Dakota.

8. On information and belief, Defendant Gary L. Evans is an individual who is a citizen of the state of Iowa and resides in Sioux City, Iowa.

9. On information and belief, Defendant David M. Roederer is an individual who is a citizen of the state of Iowa and resides in Johnston, Iowa.

10. On information and belief, Defendant Barry E. Backhaus is an individual who is a citizen of the state of Iowa and resides in Sioux City, Iowa.

11. On information and belief, Defendant Ronald A. Jorgensen is an individual who is a citizen of the state of Iowa and resides in Sioux City, Iowa.

12. On information and belief, Defendant Charles D. Terlouw is an individual who is a

citizen of the state of Iowa and resides in West Des Moines, Iowa.

13. On information and belief, Defendant Jon G. Cleghorn is an individual who is a citizen of the state of South Dakota and resides in North Sioux City, South Dakota.

14. On information and belief, Defendant Allen J. Johnson is an individual who is a citizen of the state of Nebraska and resides in South Sioux City, Nebraska.

15. On information and belief, Defendant Michael W. Dosland is an individual who is a citizen of the state of Wisconsin and resides in Grafton, Wisconsin.

16. On information and belief, Defendant Michael S. Moderski is an individual who is a citizen of the state of Wisconsin and resides in McFarland, Wisconsin.

17. On information and belief, the Directors and Officers are all former members of the Bank's board of directors and/or former officers of the Bank.

## V. FACTUAL ALLEGATIONS

### A. The Policy

18. Progressive issued Directors & Officers / Company Liability Insurance Policy for Financial Institutions No. 10032780-01 to the Bank and other Named Insureds for the claims-made Policy Period from April 13, 1006 to May 13, 2009 (the "Progressive Policy" or the "Policy"). (Ex. 1, Policy, Declarations, Items 1 & 2 (as amended by Endorsement Form Nos. 5082 (06/06) and 5081 (06/05))).

19. The Policy was not renewed upon its expiration, and the Bank purchased a one-year optional extended reporting period, or Discovery Period, which ran from May 13, 2009 to May 13, 2010. (*Id*. Endorsement Form No. 2254 (12/06) and § III.B.).

20. Subject to all Policy terms, conditions, and exclusions, the Policy provides certain coverage for Claims that are first made against Insured Persons during the Policy Period or the

Discovery Period. The Insured Persons Liability Coverage Insuring Agreement (the "D&O Coverage") provides:

> The Insurer will pay on behalf of the Insured Persons, Loss resulting from Claims first made during the Policy Period or the Discovery Period against the Insured Persons for which the Insured Persons are legally obligated to pay for Wrongful Acts, except for Loss the Company pays as indemnification.

(*Id.*, § I.A.).

21. The Policy has a Total Policy Limit of $10 million "for each Policy Year during the Policy Period for all Insuring Agreements, regardless of whether such Insuring Agreement is provided as a sublimit or separate limit . . . ." (*Id.*, Declarations, Item 3). The Limit of Liability applicable to the D&O Coverage is $10 million, (*Id.*, Declarations, Item 8), which is part of, and not in addition to, the $10 million aggregate Total Policy Limit applicable to all Claims first made during each Policy Year of the Policy. (*Id.*, Declarations, Item 3). Moreover, the Limit of Liability for Claims made during the Discovery Period is part of, and not in addition to, the $10 million Limit of Liability for D&O Coverage for all Claims made during the immediately preceding Policy Year. (*Id.*, § III.E.).

22. The Policy is not a "duty-to-defend" policy. (*Id.*, § IX.A.). Rather, it provides, in pertinent part, that "[i]t shall be the duty of the Insured and not the duty of the Insurer to defend Claims. The Insured shall only retain counsel that is mutually agreed upon with the Insurer, consent for which shall not be unreasonably withheld." (*Id.*, § IX.A.(1)).

23. The Policy further provides that "the Insurer, if requested by the Insured, shall advance covered Defense Costs on a current basis, except when advancement of Defense Costs is prohibited by law or regulation. The Insured shall repay any advanced Defense Costs to the Insurer in the event it is established that the Insurer has no liability under this Policy for such Defense

Costs." (*Id*., § IX.B.(1)). Defense Costs are part of Loss under the Policy, (*Id*., § IV.N.), and advancement of Defense Costs erodes the limit of liability. (*Id*., Declarations, "Important Notice").

**B.    The FDIC Letter**

24.    On or about May 7, 2010, during the Policy's Discovery Period, the FDIC's outside counsel, representing "the Federal Deposit Insurance Corporation ('FDIC') as Receiver for Vantus/First Federal Bank ('Vantus')" sent a letter, the FDIC Letter, to the Directors and Officers. (Ex. 2 at 1).

25.    The FDIC Letter is captioned a "Claim and Demand for Losses Suffered by Vantus Bank by Your Wrongful Acts." (*Id*.).

26.    It states, in part: "By this letter, the FDIC today demands from you money damages suffered by Vantus Bank, ('Vantus' or the 'Bank') caused by your negligence, gross, negligence, and/or breaches of fiduciary duties or other Wrongful Acts." (*Id*. at 1–2).

27.    The letter alleges that "Vantus suffered losses exceeding $82 million caused by your negligence, gross negligence, and/or breaches of fiduciary duties related to the unsafe and improper investments made on behalf of Vantus, improper investment policies, as well as unsafe and unsound practices in connection with the origination and/or administration of commercial and residential loans." (*Id*. at 2).

28.    Of the $82 million sought by the FDIC, the FDIC Letter describes $54,495,582 as losses suffered by Vantus on the Bank's investments in Collateralized Debt Obligations with Trust Preferred Securities as the underlying collateral (the "Loss Investments"). (*Id*. at 3–7, Ex. A).

29.    The FDIC Letter describes the remaining $28,048,139 as losses suffered by Vantus on eighteen allegedly imprudent loans made by the Bank (the "Loss Loans"). (*Id*. at 7–9, Ex. B).

## VI. CLAIMS FOR RELIEF

### Count One

### Claim for Declaratory Judgment (All Defendants)

### The Insured vs. Insured Exclusion Bars
### Coverage for the Receiver's Claim

30. Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 29 of this Complaint.

31. The Policy provides:

The Insurer shall not be liable to make any payment for Loss in connection with any Claim by, on behalf of, or at the behest of the Company, any affiliate of the Company or any Insured Person in any capacity except where such Claim is brought and maintained:

(1) in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of the Policy;

(2) by an Insured Person solely as a customer of the Company; provided such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any other Insured; or

(3) by a security holder of the Company as a derivative action on behalf of the Company or such affiliate; provided such Claim is brought independently of, and totally without the solicitation, assistance, participation, or intervention of any Insured or any affiliate of the Company.

(Ex. 1, Policy, § V.J. (the "IvI Exclusion")).

32. The Policy defines Company, in pertinent part, as "the entity or entities set forth in Item 1 of the Declarations . . . ." (*Id.*, § IV.E. (as amended by Endorsement Form No. 2254 (12/06)). The Bank is one of the entities set forth in Item 1 of the Declarations. (*Id.*, Declarations, Item 1; Endorsement Form No. 5081 (06/05)). Therefore the Bank is a Company, as that term is defined in the Policy.

33. The Bank was closed by the OTS on or about September 4, 2009, and the FDIC was appointed as receiver.

34. At that time, as a matter of law, the FDIC succeeded to all rights, titles, and privileges of the Bank with respect to the Bank and the Bank's assets. 28 U.S.C. § 1821(d)(2)(A)(i).

35. As the FDIC, in the FDIC Letter, has expressly acknowledged, it is proceeding against the Directors and Officers in its capacity as receiver of the Bank (Ex. 2 at 1) and seeks to recover in excess of $80 million in losses suffered by the Bank. (Ex. 2 at 2).

36. The Receiver's Claim, therefore, constitutes a Claim "by, on behalf of, or at the behest of the Company [i.e., the Bank]."

37. None of the carve-outs from the IvI Exclusion are applicable.

38. Thus, the IvI Exclusion precludes coverage under the Policy for the Receiver's Claim.

39. Accordingly, Progressive seeks a declaratory judgment that the Policy's IvI Exclusion applies to preclude all coverage under the Policy for the Receiver's Claim.

## Count Two

### Claim for Declaratory Judgment (All Defendants)

### The Loan Loss Carve-Out Bars Coverage for the Bank's Alleged Loan Losses

40. Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 39 of this Complaint.

41. The Policy provides no coverage for amounts that do not constitute Loss. The Policy defines Loss, in pertinent part, as:

> Defense Costs and any amount which the Insured Persons or the Company (if applicable) are legally obligated to pay resulting from a Claim, including damages, judgments, settlements, pre- and post-judgment interest, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law. Loss shall not include:

***

> (3) any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt . . . .

(Ex. 1, Policy, § IV.N. (the "Loan Loss Carve-Out")).

42. In the FDIC Letter, the FDIC as receiver seeks to recover approximately $28,048,139 in losses suffered by the Bank on eighteen allegedly imprudent loans made by the Bank (the "Loan Losses"). (Ex. 2 at 7–9, Ex. B).

43. The FDIC as receiver lists the Loss Loans with respect to which it seeks to recover the Bank's Loan Losses in Exhibit B to the FDIC Letter. (Ex. 2, Ex. B).

44. The Loan Losses suffered by the Bank on the Loss Loans identified by the FDIC constitute "unpaid, unrecoverable, or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt."

45. Accordingly, Progressive seeks a declaratory judgment that the Policy's Loan Loss Carve-Out precludes coverage for the Bank's alleged Loan Losses sought by the FDIC in the Receiver's Claim.

## Count Three

### Claim for Declaratory Judgment (All Defendants)

### The Investment Loss Carve-Out Bars Coverage for the Bank's Alleged Investment Losses

46. Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 45 of this Complaint.

47. The Policy provides no coverage for amounts that do not constitute Loss. The Policy defines Loss, in pertinent part, as:

> Defense Costs and any amount which the Insured Persons or the Company (if applicable) are legally obligated to pay resulting from a Claim, including damages,

judgments, settlements, pre- and post-judgment interest, punitive or exemplary damages and the multiple portion of any multiplied damage award where insurable by law. Loss shall not include:

***

(6) the depreciation (or failure to appreciate) in value of any investment product, including securities, commodities, currencies, options or futures due to market fluctuation unrelated to any Wrongful Act . . . .

(Ex. 1, Policy, § IV.N. (the "Investment Loss Carve-Out")).

48. In the FDIC Letter, the FDIC as receiver seeks to recover approximately $54,495,582 in losses suffered by the Bank on allegedly imprudent Loss Investments made by the Bank (the "Investment Losses"). (Ex. 2 at 3–7, Ex. A).

49. The FDIC as receiver lists the Loss Investments with respect to which it seeks to recover the Bank's Investment Losses in Exhibit A to the FDIC Letter. (Ex. 2, Ex. A).

50. The Investment Losses suffered by the Bank on the Loss Investments identified by the FDIC constitute "the depreciation (or failure to appreciate) in value of any investment product, including securities, commodities, currencies, options or futures due to market fluctuations unrelated to any Wrongful Act."

51. Accordingly, Progressive seeks a declaratory judgment that the Policy's Investment Loss Carve-Out precludes coverage for the Bank's alleged Investment Losses sought by the FDIC in the Receiver's Claim.

## Count Four

### Reservation of Rights (All Defendants)

52. Progressive adopts and incorporates herein by reference the allegations in Paragraphs 1 through 51 of this Complaint.

53. In addition to seeking a declaratory judgment, Progressive has reserved all of its rights under the Policy and applicable law. By seeking a judicial determination based on the foregoing Policy provisions, Progressive does not waive its potential coverage defenses under other Policy terms. Developments in connection with the Receiver's Claim may render additional defenses to coverage ripe for judicial determination. Progressive's reservation is base on, but not limited to, the Policy language discussed in Progressive's correspondence of June 9, 2010. That correspondence, without enclosures, is attached as Exhibit 3 and incorporated herein by reference.

## VII. PRAYER FOR RELIEF

WHEREFORE, Progressive Casualty Insurance Company prays for relief as follows:

A. A judicial declaration that the Policy's IvI Exclusion applies to exclude coverage for the Receiver's Claim and that, therefore, the Policy provides no coverage for the Receiver's Claim;

B. A judicial declaration that the Policy's Loan Loss Carve-Out precludes coverage for that portion of the alleged damages sought by the FDIC in the Receiver's Claim consisting of alleged Loan Losses on the Loss Loans identified in the Receiver's Claim and that, therefore, the Policy provides no coverage for that portion of the Receiver's Claim;

C. A judicial declaration that the Policy's Investment Loss Carve-Out precludes coverage for that portion of the alleged damages sought by the FDIC in the Receiver's Claim consisting of alleged Investment Losses on the Loss Investments identified in the Receiver's Claim and that, therefore, the Policy provides no coverage for that portion of the Receiver's Claim;

D. A judicial declaration of the rights and obligations of Progressive and the Directors and Officers under the Policy related to the Receiver's Claim; and

E. An Order awarding Progressive such additional declaratory and other relief as shall be found to be appropriate in the circumstances.

Respectfully submitted,

GREFE & SIDNEY, P.L.C.

By  */s/ Guy R. Cook*
Guy R. Cook (AT0001623)

500 East Court Avenue, P.O. Box 10434
Des Moines, Iowa 50306
Telephone: (515) 245-4300
Facsimile: (515) 245-4452
E-mail: gcook@grefesidney.com

Of Counsel

Lewis K. Loss
(*pro hac vice* application to be filed)
Matthew J. Dendinger
(*pro hac vice* application to be filed)
THOMPSON, LOSS & JUDGE, LLP
Two Lafayette Centre
1133 21st Street, NW, Suite 450
Washington, DC 20036
(p) 202-778-4060
(f) 202-778-4099
lloss@tljalw.com
mdendinger@tljlaw.com
ATTORNEYS FOR PROGRESSIVE CASUALTY INSURANCE COMPANY