# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | |
| Plaintiff, | No. C12-4041-MWB |
| vs. | **ORDER** |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Vantus Bank, et al., | |
| Defendants. | |

## *INTRODUCTION*

This case is before me on two motions filed by defendant Federal Deposit Insurance Corporation, as Receiver of Vantus Bank (FDIC-R): (1) a motion (Doc. No. 72) to compel plaintiff Progressive Casualty Insurance Company (Progressive) to comply with the court's March 10, 2014, order and (2) a motion (Doc. No. 77) to compel Everest Reinsurance Company (Everest) to comply with subpoena. Both motions are resisted. I conducted a telephonic hearing on August 19, 2014. All parties were represented by counsel, as was Everest. The motions are fully submitted.

Because time is of the essence (discovery is scheduled to close on August 29, 2014), this order will depart from my usual format in that it will contain no background discussion and an abbreviated written analysis. The parties need prompt answers, not a lengthy ruling. Nonetheless, I have carefully considered the parties' respective briefs and supporting exhibits.

## DISCUSSION OF SPECIFIC ISSUES

I. *Scope of the March 10, 2014, Order*

The parties disagree as to the scope of my order (Doc. No. 59) filed March 10, 2014, which compelled Progressive to produce certain information. The dispute is centered on the "Reinsurance Information" portion of the order. The operative language is:

> Progressive will be ordered to supplement its response to document request numbers 12 and 23 to produce the following documents: (1) its communications with its reinsurers regarding the Disputed Provisions, (2) its communications with its reinsurers regarding the FDIC-R's claims against the Bank's former officers and directors, (3) its communications with its reinsurers regarding coverage under its standard policy form for claims by the FDIC acting as receiver, and (4) any reinsurance policies that are implicated by FDIC-R's lawsuit against the Bank's officers and directors. If Progressive contends that any of the documents addressed by this order are protected by a privilege, it may withhold those documents and describe them in a privilege log.

Doc. No. 59 at 14. FDIC-R contends that this obligated Progressive to produce communications with reinsurers regarding any and all policies that used the same standard form as the policy issued to Vantus. Progressive disagrees and claims that it was required only to produce communications with reinsurers relating to (a) the Vantus Policy itself and (b) to the claims asserted by FDIC-R against Vantus's former directors and officers.

Progressive is correct. The order specifically required Progressive to "supplement its response to document request numbers 12 and 23." *Id.* The scope of the order did not exceed the scope of those requests. In other words, I did not order Progressive to produce even more that what FDIC-R requested.

Request 12 sought "[a]ll documents relating to the purchase, placement or ceding of any reinsurance by you that relate to the Policy, including all status reports provided by you to such reinsurance companies and memoranda relating to meetings with reinsurers." Doc. No. 43-1 at 7. Request 23 sought "[a]ll documents relating to any

2

communications with any reinsurer about the Claims." *Id*. FDIC-R defined "Policy" as "the Progressive Directors & Officers/Company Liability Insurance Policy for Financial Institutions, Policy No. 10032780-01, attached as Exhibit 1 to the Complaint, together with all endorsements and including the discovery period referenced in paragraph 19 of the Complaint." Doc. No. 72-4 at 2. Similarly, FDIC-R defined "Claims" as "any and all demands for insurance coverage and/or payment made by the FDIC and/or any officers or directors of Vantus Bank." *Id*. at 4. Thus, request number 12 was expressly limited to the Policy at issue in this case, while request number 23 was expressly limited to the claims made against Vantus's directors and officers.

In granting FDIC-R's motion to compel concerning those two requests, I did not dramatically expand their respective scopes, as FDIC-R seems to think. I simply directed Progressive to produce certain types of documents, to the extent they were otherwise responsive to the requests. FDIC-R is stuck with the scope and language of the requests it drafted. So long as Progressive produced the requested reinsurance documents with regard to the Vantus Policy, and with regard to the claims against Vantus's former officers and directors, it has complied with my order. This does not mean that all other reinsurance information is automatically beyond the scope of permissible discovery. It simply means that they are beyond the scope of FDIC-R's request numbers 12 and 23.

*2.     Attorney Client Privilege and the Work Product Doctrine*

   *a.     Overview and Applicable Standards*

Progressive has redacted portions of certain reinsurance communications on grounds of attorney-client privilege and/or the work product doctrine. FDIC-R argues the reinsurance information communicated to Progressive's reinsurers was created in the ordinary course of business and therefore, is not covered by the work product doctrine. FDIC-R also contends Progressive waived any privilege, work product or attorney-client, it may have for the reinsurance information when it voluntarily disclosed documents

3

containing that information to reinsurers and its reinsurance broker, Guy Carpenter. FDIC-R argues that the common interest doctrine cannot apply to communications with reinsurers or reinsurance brokers because the nature of the relationship and interest is purely commercial. According to FDIC-R, if the common interest doctrine does not apply, then any communications by Progressive with its reinsurers or brokers that included privileged information was a voluntary waiver of protection, thus entitling FDIC-R to discover those communications.

Progressive contends that the work product and attorney-client privileges cover legal advice and analysis contained in its reinsurance materials and that its voluntary disclosure of those materials to the reinsurance broker and reinsurers does not constitute a waiver. Progressive argues that it is entitled to redact that legal advice and analysis because the common interest doctrine applies in this situation, as the reinsurance companies and Progressive's interests are aligned and they are not adversaries.

In this diversity case, the court must "apply federal law to resolve work product claims and state law to resolve attorney-client privilege claims." *Progressive Cas. Ins. Co. v. F.D.I.C.,* 298 F.R.D. 417, 426 n.2 (N.D. Iowa 2014) (citing *St. Paul Reins. Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 636 (N.D. Iowa 2000), in turn quoting *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000)). The work product doctrine, as recognized under federal law, protects materials prepared by an attorney in anticipation of litigation from discovery. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). "There are two kinds of work product - ordinary work product and opinion work product." *Baker*, 209 F.3d at 1054 (citing *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998)). Ordinary work product includes raw factual information and is not discoverable unless the party seeking discovery has a substantial need for those materials and cannot obtain the materials by other means. *Id.* Opinion work product consists of counsel's mental impressions, conclusions, opinions or legal theories and enjoy almost absolute immunity, making them discoverable in only very rare and

4

extraordinary circumstances. *Id.; see also In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).

The work product doctrine will protect documents from discovery only when they are prepared in the anticipation of litigation. *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987). The test is, in light of the particular circumstances of the case, whether the documents can fairly be said to have been prepared or obtained because of the prospect of litigation. *Id.* There is no protection for documents prepared in the regular course of business. *Id.* The party asserting the work product privilege bears the burden of providing a factual basis for establishing the applicability of the privilege. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 628 (N.D. Iowa 2000). If the asserting party meets its burden, the burden shifts to the opposing party to prove "substantial need" and "undue hardship" in order to obtain the materials. *Id.*

The attorney-client privilege is a separate source of protection from the work product doctrine. *Baker*, 209 F.3d at 1055. Under Iowa law, the privilege is created by statute:

> A practicing attorney . . . shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

Iowa Code § 622.10(1). "Any confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client." *Keefe v. Bernard*, 774 N.W.2d 663, 669 (Iowa 2009) (quoting *Shook v. City of Davenport*, 497 N.W.2d 883, 885 (Iowa 1993), overruled on other grounds by *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 43 (Iowa 2004)). However, the Iowa Supreme Court has cautioned that "[b]ecause it impedes the full and free discovery of the truth, the attorney-client privilege is strictly construed." *Miller v. Cont'l Ins. Co.*, 392 N.W.2d 500, 504 (Iowa 1986) (citing *Chidester v. Needles*, 353

N.W.2d 849, 852 (Iowa 1984)). Thus, "voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." *Id*. at 504-05.

Some courts have applied the common interest doctrine as an exception to the general rule that voluntary disclosure of privileged material to a third party waives any applicable privilege. *See, e.g., Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012). "At its core, the common interest doctrine applies when multiple persons are represented by the same attorney. Communications made to the shared attorney to establish a defense strategy remain privileged." *North River Insurance Co. v. Columbia Casualty Co.*, 1995 WL 5792, *2 (S.D.N.Y 1995). The doctrine applies where parties are represented by separate counsel that engage in a common legal enterprise. *Id*. at *3. "The key consideration is that the nature of the interest be identical, not similar, and a legal interest, not solely commercial." *Id*. Additionally, the parties must establish that any exchange of privileged information was made in the course of formulating that common legal interest and strategy. *Fireman's Fund*, 284 F.R.D. at 140. Neither the Iowa Supreme Court nor the Eighth Circuit Court of Appeals appears to have adopted the common interest doctrine.[1]

---

[1] The Iowa Supreme Court does recognize the "joint-client exception." *Brandon v. West Bend Mut. Ins. Co.*, 681 N.W.2d 633, 644 (Iowa 2004). This exception applies when two or more persons jointly consult the same attorney to act for them in a matter of common interest. *Id.* The exception is based largely on the concept that joint clients have no intention or expectation to keep their communications confidential as between themselves. *Id.* The rational for this exception is "simply that if it appears the secret or imparted communication is such that the attorney is under a duty to divulge it for the protection of the others he has undertaken to represent in the involved transaction, the communication is not privileged." *Henke v. Iowa Home Mut. Cas. Co.*, 87 N.W.2d 920, 924 (Iowa 1958). This exception does not apply to Progressive and its reinsurers as they did not jointly consult one attorney to represent them or act on their behalf.

### b. *Analysis*

***Work Product Doctrine.*** FDIC-R argues the reinsurance information is not protected by the work product doctrine because the information was created in the ordinary course of Progressive's business. I agree. The documents were prepared and distributed to the reinsurance companies and broker for business purposes. Progressive itself admits that the documents were provided for case updates pursuant to the reinsurance agreements, or in response to specific requests, and included the matter's history, its present posture, current activity, assessments of coverage and liability issues, amounts paid and reserve, and plans for future handling. Doc No. 75 at 10. Those are all typical business purposes for the reinsurance industry. Progressive has not met its burden of showing that these documents were "prepared or obtained because of the prospect of litigation." *Simon*, 816 F.2d at 401. Therefore, they are not subject to protection under the under the work product doctrine.

***Attorney-Client Privilege.*** FDIC-R argues that even if Progressive's reinsurance documents contain attorney-client communications, any privilege was waived when Progressive voluntarily disclosed the documents to the reinsurers and broker. Again, I agree. Progressive waived any applicable attorney-client privilege when it distributed the communications to its reinsurers and broker.

While Progressive admits that it voluntarily disclosed privileged communications to third parties, it relies on the common interest doctrine to argue that the attorney-client privilege was nonetheless preserved. Even assuming Iowa recognizes the common interest doctrine, I find that Progressive has failed to establish that it applies here. As noted above, the doctrine applies only when the parties share a common *legal* interest. The relationship between Progressive and its reinsurers and broker is commercial and financial in nature, not legal. The information Progressive disclosed was in furtherance of its business relationship with the reinsurers and broker. The sole purpose of disclosure

was to obtain or maintain reinsurance policies to cover Progressive's insurance risks. That is, of course, the commercial nature of the reinsurance industry.

Progressive has not shown that the privileged information contained in the documents at issue was disclosed in order to build a legal defense or strategy for litigation. While Progressive contends that the reinsurers' interests are aligned with its own because the reinsurers and Progressive would face liability for loss if Progressive is ultimately ordered to pay proceeds under the Vantus Policy, that fact is the basis of the reinsurance industry and, indeed, the sole purpose of reinsurance. The unique circumstances of the reinsurance business do not automatically give rise to a common *legal* interest.

In this case, Progressive has not shown that its reinsurers are actively participating in Progressive's litigation and legal defense, or that they have any obligation to do so. There is no evidence establishing a joint strategy or legal enterprise, which is central to the common interest doctrine. The argument that "if Progressive loses, so do its reinsurers" does not come close to establishing that the common interest doctrine applies (assuming, again, that Iowa law even recognizes that doctrine).

Any disclosure by Progressive of attorney-client privileged communications to its reinsurers and/or broker operated as a waiver of the privilege under Iowa law. Progressive cannot now claim privilege over those communications.

### 3.     *The ESI Order*

On June 19, 2013, I approved and entered the parties' joint proposed order (Doc. No. 36) concerning the production of electronically stored information (the ESI Order). With regard to Progressive, the ESI Order includes the following provision:

> Progressive contends that Backup Documents[2] are not readily available and that the production of Backup Documents by Progressive would be unduly burdensome and would require the expenditure of significant time and resources. For that reason, Progressive does not intend to produce Backup

---

[2] "Backup Documents" are defined as "ESI stored on backup tapes." Doc. No. 36 at ¶ 10.

> Documents. In the event that FDIC-R or the Ds & Os believe that Progressive should produce such documents, they may file a motion with the Court seeking an order compelling such production. Nothing contained herein shall be deemed to constitute a waiver of their right to do so or a waiver of Progressive's right to contest any such motion.

Doc. No. 36 at ¶ 17. FDIC-R now complains that Progressive's production is missing certain, requested ESI, noting that Progressive has produced only about 10 email messages that pre-date 2010.

Progressive states that any email messages sent prior to April 2010 are likely stored on backup tapes and thus fall within the ESI Order's description of "Backup Documents." According to Progressive, this means it is not required to retrieve and produce those messages unless FDIC-R seeks, and obtains, the court order described in Paragraph 17 of the ESI Order. FDIC-R submits that its pending motion (Doc. No. 72) to compel can be treated as such a motion. During the hearing, FDIC-R's counsel presented a list of seven Progressive employees and asked that Progressive be compelled to search its backup tapes to retrieve and produce responsive email messages to or from those employees. FDIC-R's counsel acknowledged that Progressive had not been presented with that specific request at any time prior to the hearing.

Under these circumstances, I agree with Progressive. To the extent that responsive email messages (or other ESI) are stored exclusively on backup tapes, Progressive was not required to retrieve that information absent a court order pursuant to Paragraph 17 of the stipulated ESI Order. Progressive advised FDIC-R on June 17, 2014, of the fact that it did not intend to search backup tapes to locate additional ESI. Doc. No. 75 at 5. Progressive did not file a motion pursuant to Paragraph 17 of the ESI order. Instead, it filed its pending motion to compel compliance with a different order (the March 10, 2014, order). It then waited nearly two months, until the hearing on its motion was in progress, to request that Progressive be ordered to search its backup tapes concerning seven specific employees.

9

FDIC-R could have, but did not, follow the procedure set forth in the ESI Order. That would have required, at the outset, efforts to resolve the issue informally. *See, e.g.,* Local Rule 37(a). Those efforts naturally would have included discussions concerning the specific individuals about whom the backup tapes should be searched. Neither FDIC-R's present motion, nor its itemization of specific individuals during the hearing on that motion, complies with Paragraph 17 of the ESI order. FDIC-R is not entitled to an order that would require Progressive to retrieve ESI from its backup tapes.

### *4.  Other Alleged Deficiencies*

FDIC-R complains of other alleged deficiencies in Progressive's production, such as (a) the lack of documents generated during the placement of reinsurance and (b) documents setting forth the reinsurers' coverage positions. My discussion of the scope of the March 10, 2014, order, *supra*, presumably resolves this issue to a large extent. Moreover, Progressive has expressly represented that it has no additional responsive documents in its possession or control concerning these topics. Doc. No. 75 at 7-9. If that representation is incorrect, Progressive has a duty to supplement its production. Fed. R. Civ. P. 26(e)(1). However, FDIC-R has not shown that Progressive is withholding responsive, discoverable materials concerning requests 12 or 23. As such, FDIC-R is not entitled to an order compelling discovery.

### *5.  The Subpoena to Everest*

Everest complains about both the relevance of the information sought by FDIC-R's subpoena and the alleged burden that compliance would impose. It also invokes the same arguments, discussed and rejected above, that Progressive has raised as to the preservation of attorney-client privilege and work product protection when documents are shared between an insurer and reinsurer.

Everest's arguments as to relevance are not well-founded.  Everest adopts Progressive's arguments concerning the scope of the March 10, 2014, order.  That order has nothing to do with Everest.  Instead, as discussed above, the order simply compelled Progressive to respond to FDIC-R's document requests 12 and 23.  The fact that those requests were of a limited scope does not somehow control the scope of all other discovery.  While FDIC-R is not entitled to demand responses to those requests that exceed the scope of their express terms, FDIC-R is free to make other requests that go beyond that scope.

Nor does the fact that Everest was not a reinsurer of the Vantus Policy automatically place Everest off-limits for discovery in this case.  Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1).  The scope of permissible discovery is broader than the scope of admissibility.  *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).  FDIC-R has offered a plausible explanation as to how Progressive's communications with reinsurers concerning its standard form policy might be relevant to the interpretation and construction of the policy provisions at issue in this case.  Because it is undisputed that Everest has reinsured Progressive with regard to other policies using the same form, it is not obvious that Everest cannot possibly possess relevant information.

As for Everest's complaints about the effort and expense that would be required in order to respond to the subpoena, the Federal Rules of Civil Procedure protect nonparties from being subjected to "undue burden or expense" in responding to a subpoena.  *See* Federal Rule of Civil Procedure 45(d).  Indeed, federal courts are particularly mindful of Rule 45's undue burden and expense limitations.  *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999); *accord American Broadcasting Co. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011).  Here, while the original scope of the subpoena

was quite broad, I find that FDIC-R later took reasonable steps to narrow that scope and eliminate any undue burden. Everest, by contrast, repeatedly took the position that it would conduct no search, and would produce no documents, in response to the subpoena. This was a mistake. Everest has had the subpoena for six months. During that time, it could have taken steps to retrieve and produce at least some of the requested information. Instead, it simply rejected each attempt by FDIC-R to negotiate a resolution. Now, Everest will have to comply on an expedited basis.

I find that FDIC-R is entitled to obtain the documents described in the subpoena, as narrowed by FDIC-R in communications between counsel. *See* Doc. No. 77-5 at 2-4 (Exhibit C to FDIC-R's motion). While this will no doubt impose some burden on Everest, I find Everest has failed to demonstrate that the burden will be undue under the circumstances.[3]

## *CONCLUSION*

For the reasons set forth herein:

1. FDIC-R's motion (Doc. No. 72) to compel Progressive to comply with the Court's March 10, 2014, order is **granted in part** and **denied in part**. It is **granted** in that Progressive has failed to show that it is entitled to redact any information shared with its broker or reinsurers on the basis of work product and/or attorney-client privilege. As such, Progressive is hereby ordered to produce unredacted versions of materials that are responsive to FDIC-R's document request numbers 12 and 23. The motion is **denied** in all other respects.

---

[3] During the hearing, FDIC-R's counsel did not address the subpoena's request for testimony pursuant to Federal Rule of Civil Procedure 30(b)(6). Due to the upcoming deadlines in this case, and the fact that FDIC-R waited until July 18, 2014, to file its motion concerning Everest, I find that it is not appropriate to require that Everest produce witnesses to appear pursuant to Rule 30(b)(6).

2. FDIC-R's motion (Doc. No. 77) to compel Everest to comply with subpoena is **granted in part** and **denied in part**. It is **granted** in that Everest is hereby compelled to produce documents pursuant to the subpoena, but the subpoena is hereby **modified** to reflect the limitations to which FDIC-R has already agreed (Doc. No. 77-5 at 2-4). The motion is **denied** in all other respects.

3. All documents that Progressive and/or Everest are directed to produce in accordance with this order shall be produced no later than **September 12, 2014**.[4]

**IT IS SO ORDERED.**

**DATED** this 22nd day of August, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE

---

[4] I recognize that this date is not only beyond the discovery deadline, but also the dispositive motions deadline. I find, however, that an earlier compliance deadline is not likely to be feasible. Any party filing a dispositive motion on or before the September 5, 2014, deadline for such motions may file a motion to supplement its supporting appendix to include documents subsequently produced in response to this order. Of course, any such motion should be filed as soon as practicable upon receipt of those documents.