## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

PROGRESSIVE CASUALTY
INSURANCE COMPANY,

        Plaintiff,

vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver of Vantus
Bank; ARLENE T. CURRY; GARY L.
EVANS; DAVID M. ROEDERE;
BARRY E. BACKHAUS; RONALD A.
JORGENSEN; CHARLES D.
TERLOUW; JON G. CLEGHORN;
ALLEN J. JOHNSON; MICHAEL W.
DOSLAND; and MICHAEL S.
MODERSKI,

        Defendants.

No. C 12-4041-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING OBJECTIONS
TO MAGISTRATE JUDGE'S
AUGUST 22, 2014, DISCOVERY
RULING**

_____

## TABLE OF CONTENTS

**I.  INTRODUCTION** ............................................................................. 2

**II.  LEGAL ANALYSIS** ...................................................................... 4
    **A.  Standard Of Review** ............................................................... 4
    **B.  Progressive's Objections** ...................................................... 5
        **1.  The challenged parts of the Order** ..................................... 5
        **2.  Work-product disclosures** ................................................. 5
            **a.  Judge Strand's ruling** ............................................... 5
            **b.  Arguments of the parties** ........................................ 6
            **c.  Analysis** ................................................................. 7
        **3.  Attorney-client privilege** ................................................. 14
            **a.  Judge Strand's ruling** ............................................. 14
            **b.  Arguments of the parties** ........................................ 15
            **c.  Analysis** ................................................................. 17

      C.     *Everest's Objections*................................................... 22
            1.     *The challenged part of the ruling* ..................................... 22
            2.     *Arguments of the parties*............................................... 24
            3.     *Analysis* .................................................................. 27
III.   *CONCLUSION*.............................................................. 30

## I.    INTRODUCTION

Plaintiff Progressive Casualty Insurance Company (Progressive) filed this action, on April 25, 2012, seeking a declaration that there is no coverage under Directors & Officers/Company Liability Insurance Policy For Financial Institutions Policy No. 100322780-01 (the Vantus Policy) from Progressive for the claims asserted by the Federal Deposit Insurance Corporation, as Receiver for Vantus Bank, (FDIC-R) against the former officers and directors of Vantus Bank in Sioux City, Iowa, as such claims were stated in a May 7, 2010, letter to the directors and officers by the FDIC-R's outside counsel.  The FDIC-R eventually filed a separate lawsuit, on May 20, 2013, against the former officers and directors, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811 *et seq.*, alleging the gross negligence, negligence, and breach of fiduciary duty of the former officers and directors. *See FDIC v. Dosland*, C 13-4046-MWB.  The FDIC-R's claims are based primarily on its allegations that the former officers and directors caused Vantus Bank to use $65 million—120 percent of its core capital—to purchase fifteen high risk collaterized debt obligations backed by Trust Preferred Securities (CDO-TruPS) without due diligence and

in disregard and ignorance of regulatory guidance about the risks of and limits on purchases of such securities.

One twist on the tortuous road to trial in this case is now before me. On August 22, 2014, United States Magistrate Judge Leonard T. Strand entered an Order (docket no. 102) on two motions to compel by the FDIC-R. Two parts of Judge Strand's Order are at issue here. In Objections (docket no. 106), filed September 4, 2014, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and N.D. IA. L.R. 72.1, Progressive challenges Judge Strand's conclusion that the portions of communications between Progressive and its reinsurers redacted by Progressive on the basis of the attorney-client privilege and/or work-product doctrine are not protected from discovery by the FDIC-R. In Objections (docket no. 122), filed September 5, 2014, non-party Everest Reinsurance Company (Everest) challenges Judge Strand's conclusion that the FDIC-R is entitled to obtain the documents described in its subpoena to Everest, as narrowed by the FDIC-R in communications between counsel. The FDIC-R filed separate Responses (docket nos. 106 and 129) to Progressive's and Everest's Objections, and Progressive and Everest filed Replies (docket nos. 130 and 131) in further support of their Objections.

I do not find that oral arguments are necessary to my review of Judge Strand's Order. Moreover, my crowded schedule is such that I cannot hear oral arguments soon enough to avoid further delay of the discovery process in this case. Under these circumstances, I will consider Progressive's and Everest's Objections fully submitted on the parties' written submissions. Thus, I turn to consideration of Progressive's and Everest's Objections.

## II. LEGAL ANALYSIS

### A. Standard Of Review

The pertinent parts of the statute and rules authorizing the powers of a federal magistrate judge, 28 U.S.C. § 636(b)(1)(A), Rule 72(a) of the Federal Rules of Civil Procedure, and N.D. Iᴀ. L.R. 72.1, all provide for review by a district judge of a magistrate judge's order on non-dispositive motions assigned to him or her to which objections have been filed. Where a litigant does not file a timely objection to a magistrate judge's order, triggering review by a district judge, the litigant "may not challenge the [magistrate judge's] order on appeal." *McDonald v. City of Saint Paul*, 679 F.3d 698, 709 (8th Cir. 2012).

Section 636(b)(1)(A) and Rule 72(a) both specify that such review allows the district judge to modify or set aside any parts of the magistrate judge's order that are "clearly erroneous or contrary to law." *See also Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007) ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law." (citing § 636(b)(1)(A)). Although the Eighth Circuit Court of Appeals does not appear to have clarified the meaning of "clearly erroneous" in the context of a district court's review of a magistrate judge's ruling, the appellate court's formulation of the "clearly erroneous" standard for its own review of a lower court's ruling is as follows:

> A district court clearly errs if its findings are "not supported by substantial evidence in the record, if the finding[s are] based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error has been made." *Ostenfeld ex rel. Estate of Davis v. Delo*, 115 F.3d 1388, 1393 (8th Cir. 1997).

*Story v. Norwood*, 659 F.3d 680, 685 (8th Cir. 2011). Like other courts, I have read "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) to mean failure to apply or misapplication of relevant statutes, case law, or rules of procedure. *See United States v. Melton*, 948 F. Supp. 2d 998, 1002 (N.D. Iowa 2013) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

I will apply these standards in my consideration of Progressive's and Everest's Objections.

## B.     Progressive's Objections

### 1.     The challenged parts of the Order

In the part of Judge Strand's Order to which Progressive has leveled its Objections, Judge Strand considered the FDIC-R's motion to compel Progressive to produce the portions of certain communications with and from its reinsurers that Progressive had redacted on the basis of attorney-client privilege and/or the work product doctrine. I find it helpful to consider separately the Objections concerning disclosure of purported work-product information and purported attorney-client privileged information.[1]

### 2.     Work-product disclosures

### a.     Judge Strand's ruling

As to the FDIC-R's motion to compel production of purported work product, Judge Strand concluded, as follows:

> ***Work Product Doctrine.*** FDIC-R argues the reinsurance information is not protected by the work product doctrine because the information was created in the ordinary course of Progressive's business. I agree. The documents

---

[1] This separate consideration is appropriate, notwithstanding that the FDIC-R did not so neatly separate its opposition to Progressive's Objections on the basis of the protection or privilege at issue.

> were prepared and distributed to the reinsurance companies
> and broker for business purposes. Progressive itself admits
> that the documents were provided for case updates pursuant
> to the reinsurance agreements, or in response to specific
> requests, and included the matter's history, its present
> posture, current activity, assessments of coverage and liability
> issues, amounts paid and reserved, and plans for future
> handling. Doc No. 75 at 10. Those are all typical business
> purposes for the reinsurance industry. Progressive has not met
> its burden of showing that these documents were "prepared
> or obtained because of the prospect of litigation." *Simon [v.
> G.D. Searle & Co.]*, 816 F.2d [397,] 401 [(8th Cir. 1987)].
> Therefore, they are not subject to protection under the work
> product doctrine.

Order (docket no. 102), 7.

### b.    *Arguments of the parties*

In its Objections, Progressive argues that the question concerning disclosure of purported work product is not simply whether Progressive's communications with its reinsurers were prepared in the ordinary course of business, as Judge Strand premised in his Order. Rather, Progressive argues, the question is whether those communications contain opinion work-product information that pertains specifically to anticipated, and ultimately filed, coverage litigation with the FDIC-R and/or litigation between the FDIC-R and the officers and directors. Progressive argues that such protected information includes information regarding Progressive's litigation and mediation strategies and reserve information that Judge Strand has previously held is protected from disclosure.[2]

---

[2] Progressive also contends that Judge Strand's Order is clearly erroneous, because Progressive has not waived protection for specific opinion work-product information incorporated into the communications with its reinsurers at issue here. Progressive contends that no waiver occurred, because its disclosures did not substantially increase

In response, the FDIC-R argues that Judge Strand's conclusion that Progressive created or received the alleged work-product information in the ordinary course of its business is not clearly erroneous. Indeed, the FDIC-R argues that Progressive admitted that the documents at issue were ordinary business documents. Furthermore, the FDIC-R argues, with respect to claims-related communications, insurance companies usually are required by contract to notify their reinsurers of any claims for which the insurance companies may seek reinsurance coverage, and are required to provide the following: (1) a description of the claim; (2) the insurance company's analysis of whether its policy provides coverage for its policyholder; and (3) the estimated overall exposure.

In reply, Progressive argues that the law is "clear" that, even though a document as a whole may have been prepared in the ordinary course of business, material contained in such a document may still be protected as opinion work product prepared in anticipation of litigation.

    *c.    Analysis*

As Judge Strand noted, in this diversity case, the court "applies federal law to work product claims." *PepsiCo, Inc. v. Baird, Kurtz & Dobson, L.L.P.*, 305 F.3d 813, 817 (8th Cir. 2002) (citing *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th

---

the opportunities for potential adversaries, such as the FDIC-R, to obtain that information, when that information was only disclosed to its reinsurers and a reinsurance broker (as a conduit to the reinsurers), who do not have interests adverse to Progressive's, but have, instead, the same incentives to keep the information confidential. This "objection" is inapposite, however, because Judge Strand did not find any "waiver" of work-product protection; rather, he found that Progressive had failed to establish that any of the documents in question were protected by the work-product doctrine. *See* Order (docket no. 102) at 7 ("[The documents] are not subject to protection under the work product doctrine.").

Cir. 2000) (*en banc*)). "The work product doctrine was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney,' and recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir. 1987) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11) (internal citations omitted). Further, "in order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc.*, 305 F.3d at 817 (citing *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118–19 (7th Cir.1983)).[3]

Whether documents were prepared in anticipation of litigation or in the ordinary course of business is a factual determination. *Simon*, 816 F.2d at 401. The Eighth Circuit Court of Appeals set out the following test for this factual determination:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the

---

[3] In *PepsiCo*, the Eighth Circuit Court of Appeals also observed, "Work product is not discoverable unless the party seeking discovery has a substantial need for the materials and cannot obtain the substantial equivalent through other means." 305 F.3d at 817 (citing FED. R. CIV. P. 26(b)(3)). The questions of the FDIC-R's "substantial need for the materials" and whether the FDIC-R "cannot obtain the substantial equivalent through other means" (*i.e.*, "hardship") were not at issue in Judge Strand's Order, because he concluded that Progressive failed to meet its burden to show that the documents in question were prepared or obtained because of the prospect of litigation. *See* Order at 5 (citing the same "test" from *Simon* and explaining that, if the party asserting protection meets its burden, the burden shifts to the party seeking the materials to show "substantial need" and "undue hardship"); *id*. at 7 (finding that Progressive failed to meet its burden to show that the documents in question were prepared or obtained in anticipation of litigation).

> regular course of business rather than for purposes of
> litigation.

*Simon*, 816 F.2d at 401 (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198–99 (1970), with footnotes omitted, and finding that this test was also consistent with the Advisory Committee Notes to Rule 26(b)(3) of the Federal Rules of Civil Procedure).  As the Eighth Circuit Court of Appeals has also explained, "Documents are not protected under the work product doctrine . . . merely because the other party transferred them to their attorney, litigation department, or insurer," and they are *not* protected if they "were assembled in the ordinary course of business or for other nonlitigation purposes."  *Petersen v. Douglas Cnty. Bank & Trust Co.*, 967 F.2d 1186, 1189 (8th Cir. 1992) (citing *Simon*, 816 F.2d at 401).[4]

In a part of its decision in *Simon* that is particularly apt here, the Eighth Circuit Court of Appeals rejected a claim of work-product protection for "risk management documents," which had been "generated in an attempt to keep track of, control, and anticipate the costs of Searle's products liability litigation."  *Simon*, 816 F.2d at 400. The court concluded as follows:

> Applying this test, we do not believe it can be said that the
> risk management documents were prepared for purposes of
> litigation. We are no better qualified to evaluate the facts of
> this case than the special master and the district court, and we
> believe their conclusion that the risk management documents
> are in the nature of business planning documents is a
> reasonable factual conclusion. The risk management
> department was not involved in giving legal advice or in
> mapping litigation strategy in any individual case. The

---

[4] Progressive does not argue that the mere selection and compilation of the documents to be disclosed to reinsurers would reveal mental impressions concerning the potential litigation, such that they are protected as work product. *See Petersen*, 967 F.2d at 1189.

> aggregate reserve information in the risk management
> documents serves numerous business planning functions, but
> we cannot see how it enhances the defense of any particular
> lawsuit. Searle vigorously argues that its business is health
> care, not litigation, but that is not the point. Searle's business
> involves litigation, just as it involves accounting, marketing,
> advertising, sales, and many other things. A business
> corporation may engage in business planning on many fronts,
> among them litigation.

*Simon*, 816 F.2d at 401 (footnote omitted).

Here, I conclude that Judge Strand did not clearly err in rejecting work-product protection for the documents in question. *See Ferguson*, 484 F.3d at 1076 (standard of review). Where the business of Progressive is insurance against risks, and the business of reinsurers is reinsurance of risk policies, Judge Strand did not clearly err in finding that the purported work-product documents, involving communications between Progressive and its reinsurers, were "prepared in the ordinary course of business," not "in anticipation of litigation." *Simon*, 816 F.2d at 401. First, Judge Strand articulated the test from *Simon* for determination of whether documents are subject to work-product protection. *See* Order (docket no. 102) at 5 (citing this test from *Simon*); *see also Melton*, 948 F. Supp. 2d at 1002 (explaining that "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) means failure to apply or misapplication of relevant statutes, case law, or rules of procedure). Furthermore, Progressive admitted that the documents at issue were "prepared in the ordinary course of business"; the documents at issue were in the nature of business planning documents; neither Progressive nor the reinsurers were involved in giving legal advice or in mapping litigation strategy in any individual case; the communications between Progressive and its reinsurers serve numerous business functions; and Progressive's and its reinsurers businesses involved business planning on many fronts, among them litigation. *Simon*, 816 F.2d at 401.

Indeed, had I decided the issue in the first instance, I would have reached the same conclusion as Judge Strand.

It appears to me that Progressive's real objection is not that the documents *generally* were not prepared in the ordinary course of business—Progressive concedes that they were. Rather, it appears to me that Progressive's real objection is that *some specific documents* or *some specific contents* of those documents were prepared in anticipation of litigation and, hence, at least those parts of the documents at issue are still subject to work-product protection. In *Simon*, the Eighth Circuit Court of Appeals did recognize that documents that were not themselves prepared in anticipation of litigation may, nevertheless, be protected to the extent that they "reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim." 816 F.2d at 401. On the other hand, the court observed, "The purpose of the work product doctrine—that of preventing discovery of a lawyer's mental impressions—is not violated by allowing discovery of documents that incorporate a lawyer's thoughts in, at best, . . . an indirect and diluted manner." *Id.* at 402.

Progressive did raise this argument—albeit without any citations to supporting authority, such as *Simon*, for it—in its Response To [The FDIC-R's] Motion To Compel (docket no. 75), 9-10.[5] Progressive conceded that it "does not argue that its communications with its reinsurers were not generated in the ordinary course of business or that they are inherently privileged or work product in their entirety." *Id.* at 9. Rather, Progressive argued,

> The issue before the Court is the application of the
> attorney-client privilege and work-product doctrine to specific

---

[5] In contrast, Progressive cited copious authority in support of its contention that it did not waive work-product protection, *see* Progressive's Response To [The FDIC-R's] Motion To Compel (docket no. 75) at 11-12, an issue that Judge Strand ultimately did not reach in his Order.

documents prepared by claims attorneys at ABAIS [its managing general agent with respect to this and other matters] primarily for its and Progressive's internal use. Progressive provided these documents to its reinsurers as case updates pursuant to the reinsurance agreements and/or in response to their requests. These documents include the matter's history, its present posture, current activity, assessments of coverage and liability issues, amounts paid and reserved, and plans for future handling.

Long before any of these reports were authored, in or about June 2008, Progressive and ABAIS retained outside coverage counsel to assist with failed-bank matters. They retained counsel with respect to the Vantus Bank matter in or about May 2010. In preparing the reports for the Vantus Bank matter, and other failed-bank matters, Progressive/ABAIS claims attorneys incorporated legal advice, counsel, and analysis provided to Progressive and ABAIS by their outside counsel, as well as legal advice and analysis regarding the FDIC's underlying claim against former bank directors and officers provided by their defense counsel. This information is protected by the attorney-client privilege and/or work-product doctrine. It is only the portions of Progressive's communications with its reinsurers reflecting such privileged and/or work-product information that Progressive properly has redacted.

Progressive's Response To [The FDIC-R's] Motion To Compel (docket no. 75) at 9-10 (footnotes omitted).

In his Order, Judge Strand did not explicitly consider Progressive's argument for "piecemeal" application of work-product protection to *specific documents* or *specific parts of documents* that were otherwise prepared in the regular course of business. *See* Order (docket no. 102) at 7. Nevertheless, in explicitly holding that Progressive had failed to meet its burden to show that the documents were subject to work product

protection, Judge Strand explicitly relied on Progressive's statements in the first paragraph of the quotation, just above, from Progressive's brief. *See id.* ("The documents were prepared and distributed to the reinsurance companies and broker for business purposes. Progressive itself admits that the documents were provided for case updates pursuant to the reinsurance agreements, or in response to specific requests, and included the matter's history, its present posture, current activity, assessments of coverage and liability issues, amounts paid and reserve, and plans for future handling. Doc No. 75 at 10. Those are all typical business purposes for the reinsurance industry.").

I cannot find that Judge Strand's conclusion that Progressive failed to meet its burden to show that the documents in question were entitled to work-product protection—including his implicit finding that not even portions of those documents were entitled to such protection—was clearly erroneous. *See Ferguson*, 484 F.3d at 1076 (standard of review). This is so, for three reasons. First, the fact that *specific documents* or *parts of documents* were prepared by ABAIS claims attorneys does not necessarily establish that they are subject to work-product protection. *Cf. Petersen*, 967 F.2d at 1189. Second, preparation of *specific documents* or *parts of documents* by claims attorneys at ABAIS for its and Progressive's "internal use" does not unambiguously show that such "internal use" was "in anticipation of litigation," rather than "in the ordinary course of business," where the business of an insurance company and its managing agent is risk management. *Cf. Simon*, 816 F.2d at 401 ("A business corporation may engage in business planning on many fronts, among them litigation."). Third, Progressive also conceded that the documents were provided to the reinsurers as case updates pursuant to the reinsurance agreements and/or in response to their requests—that is, Progressive conceded that the *specific documents* or *parts of documents* were prepared—and would have been prepared *anyway*—"in the ordinary course of business." Indeed, had I considered this issue in the instance, I also would have concluded that Progressive had failed to meet its burden to

13

show that that even portions of the documents in question were entitled to work-product protection.

Progressive's Objections to Judge Strand's rejection of work-product protections for the documents in question are overruled.

### 3.     *Attorney-client privilege*
#### a.     *Judge Strand's ruling*

Progressive also objects to Judge Strand's Order as erroneously granting the FDIC-R's motion to compel production of purported attorney-client privileged documents. In his Order, Judge Strand ruled as follows:

> ***Attorney-Client Privilege.*** FDIC-R argues that even if Progressive's reinsurance documents contain attorney-client communications, any privilege was waived when Progressive voluntarily disclosed the documents to the reinsurers and broker. Again, I agree. Progressive waived any applicable attorney-client privilege when it distributed the communications to its reinsurers and broker.

> While Progressive admits that it voluntarily disclosed privileged communications to third parties, it relies on the common interest doctrine to argue that the attorney-client privilege was nonetheless preserved. Even assuming Iowa recognizes the common interest doctrine, I find that Progressive has failed to establish that it applies here. As noted above, the doctrine applies only when the parties share a common *legal* interest. The relationship between Progressive and its reinsurers and broker is commercial and financial in nature, not legal. The information Progressive disclosed was in furtherance of its business relationship with the reinsurers and broker. The sole purpose of disclosure was to obtain or maintain reinsurance policies to cover Progressive's insurance risks. That is, of course, the commercial nature of the reinsurance industry.

Progressive has not shown that the privileged information contained in the documents at issue was disclosed in order to build a legal defense or strategy for litigation. While Progressive contends that the reinsurers' interests are aligned with its own because the reinsurers and Progressive would face liability for loss if Progressive is ultimately ordered to pay proceeds under the Vantus Policy, that fact is the basis of the reinsurance industry and, indeed, the sole purpose of reinsurance. The unique circumstances of the reinsurance business do not automatically give rise to a common *legal* interest.

In this case, Progressive has not shown that its reinsurers are actively participating in Progressive's litigation and legal defense, or that they have any obligation to do so. There is no evidence establishing a joint strategy or legal enterprise, which is central to the common interest doctrine. The argument that "if Progressive loses, so do its reinsurers" does not come close to establishing that the common interest doctrine applies (assuming, again, that Iowa law even recognizes that doctrine).

Any disclosure by Progressive of attorney-client privileged communications to its reinsurers and/or broker operated as a waiver of the privilege under Iowa law. Progressive cannot now claim privilege over those communications.

Order (docket no. 102), 7-8.

### b.    *Arguments of the parties*

In support of its Objections to this part of Judge Strand's Order, Progressive argues

Judge Strand's conclusion that the "common interest" exception does not apply in the

circumstances of this case is clearly erroneous and contrary to law.  Progressive argues

that there is no waiver of the attorney-client privilege where, as here, there is a "common

interest" among the parties with whom the documents are shared.  Progressive concedes

that no Iowa courts appear to have addressed the issue of the "common interest" exception to waiver, but Progressive argues that courts around the country have concluded that the "common interest" exception applies to communications between insurers and reinsurers, at least when, as here, their interests regarding the availability of coverage under a policy are aligned. Progressive argues that the facts here show both the existence of a common legal interest and communications made in the course of and in furtherance of that interest. The common legal interest on which Progressive relies is the express authorization in the reinsurance agreements for the reinsurers to participate with Progressive in the defense of any claim, loss, or legal proceeding likely to involve the reinsurer. Progressive then argues that the documents in question where provided in direct furtherance of the common legal enterprise between Progressive and the reinsurers.

In its Opposition, the FDIC-R argues that Judge Strand properly rejected Progressive's argument that the "common interest" exception prevented a waiver, because he found that, even if the exception was recognized under Iowa law, Progressive failed to establish any common *legal*, as opposed to *commercial* or *financial*, interest with its broker and reinsurers. The FDIC-R also argues that, contrary to Progressive's assertions, courts around the country have repeatedly rejected assertions of privilege where documents have been shared with reinsurers. The FDIC-R asserts that Progressive does not dispute that the documents at issue were voluntarily disclosed to multiple third parties, which, alone, is enough to support Judge Strand's finding of waiver. The FDIC-R argues that, even if the "common interest" exception applied, the exception only protects *privileged* documents—it is not an independent privilege, but an exception to waiver when privileged documents are exchanged between parties with the required "common interest." The FDIC-R argues that Progressive failed to show either the required "common legal interest," where the "common interest" was commercial or financial, not legal, or that the documents were exchanged in furtherance of that

16

"common legal interest." The FDIC-R argues that merely having the authority to participate in Progressive's defense of a claim does not establish that the reinsurers have the required "common legal interest." The FDIC-R also argues that the documents were exchanged because of contractual obligations, not because of a "common legal interest."[6]

### c.    Analysis

Judge Strand was correct that, in a diversity case, such as this, the determination of whether attorney-client privilege applies is governed by state law. *See* FED. R. EVID. 501; *Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) ("Because this is a diversity case, the determination of whether attorney-client privilege applies is governed by state law."). Progressive concedes that Judge Strand's conclusion that Iowa courts have never expressly recognized the "common interest" exception as an exception to waiver of the attorney-client privilege is not contrary to law. *See Ferguson*, 484 F.3d at 1076 (standard of review); *see also Melton*, 948 F. Supp. 2d at 1002 (explaining that "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) means failure to apply or misapplication of relevant statutes, case law, or rules of procedure). Progressive appears to argue that Judge Strand should, nevertheless, have found the "common interest" exception applicable here and that his conclusion that it was not was clearly erroneous. I find no such clear error.

First, Judge Strand did consider, in the alternative, whether Progressive had established that the "common interest" exception is applicable, if it were recognized under Iowa law. Second, Progressive does not object to Judge Strand's legal formulation of the requirements to establish the "common interest" exception, *see* Order at 6, as contrary to law. *See Ferguson*, 484 F.3d at 1076 (standard of review); *see also Melton*,

---

[6] Progressive's Reply is devoted entirely to supporting its Objections to the "work product" part of Judge Strand's Order.

948 F. Supp. 2d at 1002 (explaining that "contrary to law" within the meaning of Rule 72(a) (and, hence, § 636(b)(1)(A)) means failure to apply or misapplication of relevant statutes, case law, or rules of procedure). I agree that Judge Strand correctly described the legal requirements for application of the exception.

More specifically, in a case on which Judge Strand relied, involving an assertion of an exception for communications between an insurer and a reinsurer, the United States District Court for the Southern District of New York explained the exception as follows:

> "A 'common interest' doctrine, erroneously called 'common interest privilege' or 'joint defense privilege,' is an exception to the general rule that voluntary disclosure of confidential, privileged material to a third party waives any applicable privilege," *Sokol v. Wyeth, Inc.*, No. 07 Civ. 8442(SHS)(KNF), 2008 WL 3166662, *5 (S.D.N.Y. Aug. 4, 2008) (citation omitted). "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989). It exists "to protect the free flow of information from client to attorney … whenever multiple clients share a common interest about a legal matter." *Id*. at 243–44. The doctrine "is not an independent source of privilege or confidentiality" so that "[i]f a communication is not protected by the attorney-client privilege or the attorney work-product doctrine, the common interest doctrine does not apply." *Sokol*, 2008 WL 3166662, at *5 (citations omitted); *see also HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 71 (S.D.N.Y.2009) ("*HSH Nordbank*").
>
> Obtaining the protections of the common interest doctrine requires a two-part showing. First, the parties exchanging otherwise privileged information must establish "a common legal, rather than commercial, interest." *Sokol*,

2008 WL 3166662, at *5. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *North River Ins. Co. v. Columbia Cas. Co.*, No. 90 Civ. 2518(MJL)(JCF), 1995 WL 5792 at *3 (S.D.N.Y. Jan. 5, 1995) (citation omitted) ("*North River*"). For courts to find such a common legal interest, the parties must have come to an agreement, "though not necessarily in writing, embodying a cooperative and common enterprise towards an identical legal strategy." *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y.2003); *see, e.g., Schwimmer*, 892 F.2d at 243 (examining whether "a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."); *HSH Nordbank*, 259 F.R.D. at 72. Courts may look to whether "multiple persons are represented by the same attorney" or any other evidence to demonstrate the existence of "coordinated … legal efforts." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446, 448 (S.D.N.Y.1995) (quotation omitted).

Second, the parties must establish that any exchange of privileged information was "made in the course of formulating a common legal strategy [,]" and that the parties understood that the communication would be in furtherance of the shared legal interest. *Sokol*, 2008 WL 3166662, at *5, 7 ("[T]he vital element in establishing that the attorney-client privilege applies is that the communication is made in confidence for the purposes of obtaining legal advice from the attorney."). One fact courts often consider in assessing this factor is whether an attorney for either party participated in the exchange of privileged information. *See, e.g., HSH Nordbank*, 259 F.R.D. at 72 ("[C]ounsel for one of the parties was actively engaged in the communications at issue. Thus, this is not a situation where the various non party lenders and Nordbank discussed subject matter previously discussed with counsel and now seek to assert privilege for that reason

alone."); *cf. Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y.1996) ("Salomon wants to protect confidences it shared with its own attorneys and then shared, not with Northrop's attorneys, but with Northrop. To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys.") (citations omitted).

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139-40 (S.D.N.Y. 2012); *see also* Order at 6 (relying, in part, on *Fireman's Fund Ins. Co.*, 284 F.R.D. at 139-40).

The court in *Fireman's Fund Insurance* rejected a categorical rule that insurers and reinsurers share a joint *legal* interest based on a reinsurer's obligations to cover the insurer's payment obligations. *Id.* at 140. The court in *Fireman's Fund Insurance* rejected such an argument, because, unlike the relationship between an insurer and an insured, there is no "duty to defend" between a reinsurer and an insurer, and expressly concluded that "'a common interest cannot be assumed merely on the basis of the status of the parties.'" *Id.* (quoting *North River Ins. Co. v. Columbia Cas. Co.*, No. 90 Civ. 2518(MJL)(JCF), 1995 WL 5792, *4 (S.D.N.Y. Jan. 5, 1995). What is required is evidence of an agreement (although not necessarily a written agreement) between an insurer and its reinsurer that establishes a "'cooperative and common enterprise towards an identical legal strategy.'" *Id.* at 141 (quoting *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003)). Not only did the court in *Fireman's Fund Insurance* find no common legal interest sufficient to support application of the "common interest" exception, it also found no sufficient evidence that the purportedly privileged materials were exchanged "'in the course of formulating a common legal strategy' or 'for the purpose of obtaining legal advice from'" the reinsurer. *Id.* The parties in that case had

not pointed to the involvement of attorneys in the exchange of the documents, which "might have supported such a finding," nor had the parties pointed to evidence of a "legal necessity of exchanging otherwise protected information." *Id.*

Here, Judge Strand, likewise, concluded that Progressive and its reinsurers do not have a common *legal* interest merely because the reinsurers may have an obligation to pay Progressive's losses; rather the relationship between Progressive and its reinsurers and reinsurance broker is commercial and financial, *id.*, and that finding is not clearly erroneous. Judge Strand also did not clearly err in concluding that Progressive also failed to establish that an agreement between it and its reinsurers established a "'cooperative and common enterprise towards an identical legal strategy.'" *Id.* at 141 (quoting *Lugosch v. Congel*, 219 F.R.D. 220, 237 (N.D.N.Y. 2003)). A contractual authorization for the reinsurers to participate in litigation with Progressive falls well short of evidence satisfying that requirement. As Judge Strand found, "There is no evidence establishing a joint legal strategy or legal enterprise, which is central to the common interest doctrine," Order at 8, and I find no clear error in that finding. I also find no clear error in Judge Strand's conclusion, like the conclusion in *Fireman's Fund Insurance*, 284 F.R.D. at 141, that Progressive failed to establish that any exchange of the documents in question was in furtherance of a common *legal* interest, or was a matter of *legal* necessity, rather than in furtherance of Progressive's commercial or financial relationship with its reinsurers, even if some of the documents were purportedly prepared by ABAIS's claims attorneys.

In short, I do not find any part of Judge Strand's disposition of the attorney-client privilege issue that is contrary to law or clearly erroneous. *See Ferguson*, 484 F.3d at 1076 (standard of review); *see also Melton*, 948 F. Supp. 2d at 1002 (meaning of "contrary to law"). Again, had I considered this issue in the first instance, I would have

decided it the same way. Progressive's Objections to this part of Judge Strand's Order are overruled.

Thus, Progressive's Objections to Judge Strand's Order are overruled in their entirety.

## C.    Everest's Objections

I turn, next, to non-party Everest's September 5, 2014, Objections (docket no. 122). In those Objections, Everest challenges Judge Strand's conclusion that the FDIC-R is entitled to obtain the documents described in its subpoena to Everest, as narrowed by the FDIC-R in communications between counsel.

### 1.    The challenged part of the ruling

The challenged part of Judge Strand's Order is the following:

> Everest complains about both the relevance of the information sought by FDIC-R's subpoena and the alleged burden that compliance would impose. It also invokes the same arguments, discussed and rejected above, that Progressive has raised as to the preservation of attorney-client privilege and work product protection when documents are shared between an insurer and reinsurer.
>
> Everest's arguments as to relevance are not well-founded. Everest adopts Progressive's arguments concerning the scope of the March 10, 2014, order. That order has nothing to do with Everest. Instead, as discussed above, the order simply compelled Progressive to respond to FDIC-R's document requests 12 and 23. The fact that those requests were of a limited scope does not somehow control the scope of all other discovery. While FDIC-R is not entitled to demand responses to those requests that exceed the scope of their express terms, FDIC-R is free to make other requests that go beyond that scope.

Nor does the fact that Everest was not a reinsurer of the Vantus Policy automatically place Everest off-limits for discovery in this case. Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* Fed. R. Civ. P. 26(b)(1). The scope of permissible discovery is broader than the scope of admissibility. *See, e.g., Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). FDIC-R has offered a plausible explanation as to how Progressive's communications with reinsurers concerning its standard form policy might be relevant to the interpretation and construction of the policy provisions at issue in this case. Because it is undisputed that Everest has reinsured Progressive with regard to other policies using the same form, it is not obvious that Everest cannot possibly possess relevant information.

As for Everest's complaints about the effort and expense that would be required in order to respond to the subpoena, the Federal Rules of Civil Procedure protect nonparties from being subjected to "undue burden or expense" in responding to a subpoena. *See* Federal Rule of Civil Procedure 45(d). Indeed, federal courts are particularly mindful of Rule 45's undue burden and expense limitations. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999); *accord American Broadcasting Co. v. Aereo, Inc.*, No. 13-MC-0059, 2013 WL 5276124, at *7 (N.D. Iowa Sept. 17, 2013); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011). Here, while the original scope of the subpoena was quite broad, I find that FDIC-R later took reasonable steps to narrow that scope and eliminate any undue burden. Everest, by contrast, repeatedly took the position that it would conduct no search, and would produce no documents, in response to the subpoena. This was a mistake. Everest has had the subpoena for six months. During that time, it could have taken steps to retrieve and produce at least some of the

requested information. Instead, it simply rejected each attempt by FDIC-R to negotiate a resolution. Now, Everest will have to comply on an expedited basis.

I find that FDIC-R is entitled to obtain the documents described in the subpoena, as narrowed by FDIC-R in communications between counsel. *See* Doc. No. 77-5 at 2-4 (Exhibit C to FDIC-R's motion). While this will no doubt impose some burden on Everest, I find Everest has failed to demonstrate that the burden will be undue under the circumstances.

Order at 10-12 (footnote omitted).

### 2.    *Arguments of the parties*

Everest asserts that this part of Judge Strand's Order is contrary to law, because it fails to take into account the limitation on duplicative discovery in Rule 26(a)(2)(C). Everest explains that, in communications between counsel, the FDIC-R's counsel agreed that the FDIC-R was "not seeking documents beyond those ordered to be produced by Progressive." Everest also explains that the FDIC-R had argued that the material sought from Everest was not duplicative of documents already produced by Progressive, because Progressive's disclosures had been "deficient," but Judge Strand concluded in his Order that Progressive's production was only deficient as to redaction of the documents on the basis of attorney-client privilege and/or work product protection. Everest argues that duplicative production cannot be based on a finding that the production might contain additional relevant material. Indeed, Everest contends that the Order fails even to consider Everest's argument that the discovery demanded in the subpoena is duplicative of discovery that the FDIC-R has already obtained from Progressive and that is otherwise available from the reinsurers who actually reinsure the Vantus Policy. Instead, Everest argues that the Order considered only "relevance" under Rule 26(b)(1). Everest also argues that, even if there is no duplication, there is no question that the FDIC-R *could*

*have* obtained the discovery demanded in its subpoena to Everest by way of document requests to Progressive, but the FDIC-R never tried to do so.

Everest also argues that Judge Strand's Order is contrary to law, because it fails to consider the heightened standard for relevance applicable to discovery from non-parties, which it argues is different from the Rule 26(b)(1) standard that applies to discovery from parties. Everest cites cases that it argues establish that discovery from non-parties requires a greater showing of "necessity," and more sensitivity to inconvenience and harassment of the entity from whom the discovery is sought. Everest argues that, under this heightened standard, Judge Strand should have found that the discovery sought by the subpoena imposed an undue burden.

In response, the FDIC-R argues that mere overlap with documents obtained elsewhere is not the standard for barring discovery under Rule 26(b)(2)(C); rather, the question is whether the discovery sought is *unreasonably* cumulative or duplicative, or can be obtained from some other source that is *more* convenient, *less* burdensome, or *less* expensive. Thus, the FDIC-R contends that it is not enough to argue that the materials sought can be obtained from someone else. Indeed, the FDIC-R argues that courts have recognized that differences between documents that should be identical, but that were obtained from different sources, may be critical evidence. The FDIC-R also argues that the Order is factually correct, because the FDIC-R is not simply seeking discovery from Everest that is entirely duplicative of discovery sought from Progressive. The FDIC-R identifies the following as examples of non-duplicative documents sought from Everest: (1) documents exchanged between Everest and ABAIS, American Bankers Mutual Insurance, Ltd., (ABMI), which is the parent company of ABAIS, or Guy Carpenter, a reinsurance broker; (2) documents reflecting Everest's own audits of claims; and (3) documents from Everest's claim files for claims by the FDIC-R reflecting Progressive's oral communications regarding coverage. The FDIC-R also argues that

Everest has mischaracterized Judge Strand's Order, listing the ways in which it had narrowed the documents requested from Everest in its communications with Everest. The FDIC-R explains that Everest takes out of context the quote from one of its counsel's communications, on which Everest particularly relies, because that communication, as a whole, reflects that the discovery requests to Everest are not duplicative of Progressive's production. The FDIC-R also argues that the limitations that Judge Strand placed on discovery from Progressive expressly did not preclude additional or broader discovery from other entities. Finally, the FDIC-R argues that Everest may be the only source of some materials that were "lost" when Progressive sold its former Professional Liability Group (PLG) to ABMI in or about 2010, which ABMI then reformulated as its subsidiary, ABAIS, because there was no centralized transfer of email from Progressive to ABAIS, even though many of Progressive's former employees in the PLG moved to ABAIS.

The FDIC-R also disputes Everest's contention that Judge Strand applied the wrong "relevance" standard to discovery from non-parties. The FDIC-R argues, first, that Everest cannot raise this contention now, because it failed to do so before Judge Strand. Just as importantly, the FDIC-R argues, Judge Strand applied the correct "relevance" standard, as set out in Rule 26(b)(1), which applies to *all* parties or entities from whom discovery is sought. In the alternative, the FDIC-R points out that Judge Strand did take note of the fact that Everest is a non-party, that he recited his awareness of the "undue burden or expense" limitation in Rule 45, and that his "relevance" findings satisfy any standard.

In reply, Everest argues that the FDIC-R has mischaracterized its Objections, because Everest is actually arguing that Judge Strand's Order requires discovery that is entirely duplicative of the discovery that Progressive already provided to the FDIC-R, not that the FDIC-R seeks discovery that is entirely duplicative of discovery that the FDIC-R pursued from Progressive. Everest explains its objection to be that, because

Judge Strand limited the documents that Everest is required to produce to those documents responsive to the subpoena, as "modified to reflect the limitations to which the FDIC-R ha[d] already agreed," Order at 13, and because the FDIC-R agreed in a July 2, 2014, e-mail, identified in the Order at 2-4, that it was not seeking any documents from Everest "beyond those ordered to be produced by Progressive," the discovery required under the Order modifying the subpoena is "entirely duplicative" of the discovery that Progressive has already provided to the FDIC-R. Everest also argues that, because the FDIC-R agreed not to seek documents from Everest "beyond the documents ordered to be produced by Progressive," the Order requires Everest to perform a file-by-file search for documents that Progressive has already produced to the FDIC-R and, thus, the Order is contrary to Rule 26(b)(2)(C). Everest also argues that the FDIC-R is wrong that the "documents ordered to be produced by Progressive" identified in the Order include reinsurance communications that Progressive was ordered to produce in *any* action, not just in *this* action.

### 3. *Analysis*

Judge Strand drew the standards for "relevance" and the "scope" of discovery from Rule 26(b) and *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992). Rule 26(b)(1) provides, as follows:

> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

FED. R. CIV. P. 26(b)(1).  The cited portion of Rule 26(b), which states limitations on the frequency and extent of discovery, provides as follows:

> **(C) When Required.**  On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2).  Nothing in the language of Rule 26 or the Advisory Committee Notes suggests that different standards of relevance or limitations on the frequency and extent of discovery are applicable to non-parties than are applicable to parties to the litigation.

Thus, as the Eighth Circuit Court of Appeals explained in *Hofer*,

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D.Minn.1989) (and cases cited therein). While the

> standard of relevance in the context of discovery is broader
> than in the context of admissibility (Rule 26(b) clearly states
> that inadmissibility is no grounds for objection to discovery),
> *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct.
> 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor
> Corp., USA*, 110 F.R.D. 122 (S.D.N.Y.1986), this often
> intoned legal tenet should not be misapplied so as to allow
> fishing expeditions in discovery. Some threshold showing of
> relevance must be made before parties are required to open
> wide the doors of discovery and to produce a variety of
> information which does not reasonably bear upon the issues
> in the case.

*Hofer*, 981 F.2d at 380. Like Rule 26, *Hofer* does not recognize standards or limitations on relevance or the scope of discovery from a non-party separate or different from those for discovery from a party to the litigation.

Judge Strand also recognized, however, that Rule 45, which permits subpoenas for documents from non-parties, requires "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). The Advisory Committee Notes to the 1991 amendment of Rule 45 explain, "Paragraph (d)(1) extends to non-parties the duty imposed on parties by the last paragraph of Rule 34(b), which was added in 1980." *Id.*, Advisory Committee Notes to 1991 Amendments. Thus, this rule also does not impose a *different* standard for discovery of documents from non-parties than from parties, simply a separate recitation of the standard.

I do not find Judge Strand's reliance on these standards to determine the relevance or the scope of discovery from a non-party to be contrary to law. *See Ferguson*, 484 F.3d at 1076 (standard of review); *see also Melton*, 948 F. Supp. 2d at 1002 (meaning of "contrary to law").

Nevertheless, the Eighth Circuit Court of Appeals has hinted that the need for and the burden of discovery from a non-party should be taken into consideration, when a party may, instead, be able to obtain discovery directly from another party to the litigation. *See Government of Ghana v. ProEnergy Servs., L.L.C.*, 677 F.3d 340, 345 & n.5 (8th Cir. 2012). That said, Judge Strand was clearly aware that Everest was a non-party to this litigation, and he did consider the burdens of the discovery on Everest.

The thrust of Everest's Objections appears to be that, in his Order, Judge Strand did not recognize that the discovery he was ordering from Everest is duplicative of the discovery that he was or had ordered from Progressive. Everest contends that the duplicativeness of the discovery is apparent from the FDIC-R's counsel's representations about the limitations on discovery from Everest in communications to Everest, which Judge Strand specifically incorporated into his Order. Yet, Judge Strand specifically identified the communications of the FDIC-R's counsel that narrowed the scope of what Everest was compelled to produce. *See* Order at 12 (citing FDIC-R's Motion To Compel Everest Reinsurance Company's Compliance With Subpoena, Exhibit C (docket no. 77-5) at 2-4). That citation is to an e-mail from the FDIC-R's counsel that cogently explains the comment of the FDIC-R's counsel on which Everest relies and why the FDIC-R's request to Everest is not duplicative or cumulative of discovery already received from Progressive. Thus, not only do I conclude that Judge Strand did not clearly err by ordering discovery from Everest that was so duplicative or cumulative or so readily available from Progressive as to be barred by Rule 26(b)(2), *see Ferguson*, 484 F.3d at 1076 (standard of review), I entirely agree with his order compelling such discovery.

Everest's Objections to Judge Strand's Order are overruled.

### III.   CONCLUSION

Upon the foregoing,

1.     Plaintiff Progressive's September 4, 2014, Objections (docket no. 106) to Judge Strand's August 22, 2014, Order (docket no. 102) are **overruled**;

2.     Non-party Everest's September 5, 2014, Objections (docket no. 122) to Judge Strand's August 22, 2014, Order (docket no. 102) are **overruled**; and

3.     Judge Strand's August 22, 2014, Order (docket no. 102) is **affirmed**.

**IT IS SO ORDERED.**

**DATED** this 3rd day of October, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA